IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Oscar Rodriguez,<br>    Petitioner<br><br>-V-<br><br>United States of America,<br>    Respondent. | Motion for Reduction of Sentence<br>Pursuant to Section 603 of the<br>First Step Act of 2018 and<br>18 U.S.C. §3582(c)(1)(A).<br><br>Docket No.: 1:536 10-CR-905-046 (DEW) |

MOTION FOR REDUCTION OF SENTENCE PURSUANT TO SECTION 603 OF THE
FIRST STEP ACT OF 2018 AND 18 U.S.C. §3582(c)(1)(A)

Comes now, Oscar Rodriguez, hereinafter, Petitioner, Pro-Se, pursuant to Title 18, United States Code §3582(c)(1)(A) and Section 603 of the First Step Act of 2018 ("FSA"), to move this Court to reduce the sentence imposed in the above-mentioned action. Petitioner respectfully submits this Motion in Support of a Sentence Reduction and Memorandum in Support of Motion for a Sentence Reduction consistent with the FSA.

## Overview

On October 14, 2010, Petitioner was arrested and charged with various narcotic related offenses. After a jury trial, Petitioner was convicted of two counts, which also contained forfeiture allegations.

The counts of the conviction were as follows:

Count 1 (Rico Conspiracy), in violation of Title 18 U.S.C. §§1962(d) and 1963.

Count 2 (Conspiracy to Distribute Marijuana), in violations of Title 21 U.S.C. §§ 846, 841(b)(1)(A).

<u>Count 1</u> charges that from 1996 to 2012, in the Southern District of New York and elsewhere, Oscar Rodriguez, A/K/A "Elias Rodriguez", A/K/A "Chang", A/K/A "Chan", and others, conspired to violate the racketeering laws outlined in 18 U.S.C.

1962(c), and conducted and participated, directly and indirectly, in the conduct and affairs of the Rodriguez Organization (the "Enterprise"), which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity involving narcotics trafficking, which is chargeable under New York Penal Law Sections 20.00, 105.15, 110.00, 220.06, 220.31, and 220.39, and in violation of 21 U.S.C. 812, 841, 843, and 846; murder, which is chargeable under New York Penal Law sections 20.00, 105.15, 110.00, and 125.25, and New jersey statutes 2C:11-3, 2c:2-6(b)(4), and 2C:2-6)c_; money laundering and money laundering conspiracy, in violation of 18 U.S.C. 1956 and 1957; travel in interstate and foreign commerce in aid of racketeering, in violation of 18 U.S.C. 1952; and obstruction of justice, in violation of 18 U.S.C. 1512. it was a part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

(18 U.S.C. 1962(d))

Count 2 charges that from 1996 to 2010, in the Southern District of New York and elsewhere, Oscar Rodriguez and others conspired to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. 812, 841(a)(1), and 841(b)(1)(A).

(21 U.S.C. 846)

On November 3rd, 2014, Petitioner was sentenced by Hon. Donald E. Walter, which found him guilty on Counts 1ss, 2ss, after a plea of not guilty. Count(s) 2, 2s, 3s, remaining count(s) of the indictment were dismissed on the motion of the United States. Petitioner was given a total term of two hundred forty (240) months imprisonment, as to Count One and Count Two, to run concurrently. Also, Petitioner was given a Supervised Release term of five years as to Count One and to Count Two, to run concurrently.

Petitioner was also given a Special Assessment of $200.00. The judgment was entered on November 5th, 2014.

At Petitioners sentencing the following colloquy occurred:

> THE COURT: I understand. I have considered all of the factors under 3553, the comments of your family and friends. Needless, I can find no reason to depart below the guidelines. I am going to stay within the guidelines, and you are sentenced to the custody of the Bureau of Prisons for a term of 216 months.
>
> MS. ELY: Your Honor, there's a 20-year mandatory minimum sentence here, 240 months imprisonment.
>
> THE COURT: Is there?
>
> MS. ELY: A prior felony information was filed.
>
> THE COURT: You're correct. So I got to go to the mandatory, Ms. Birger.
>
> MS. BIRGER: You do, Your Honor. There's a guidelines range that spans the range, and I'm suggesting to Your Honor that there is no reason to go a day over the mandatory minimum.
>
> THE COURT: I won't, obviously. So strike that. 240 months. 20 years. There it is, it's Congress, not me...

(Sent. Tr. dated Nov. 3rd, 2014, at 13-14)

The Prior Felony Information which triggered the 20 year mandatory minimum sentence was filed on march 5th, 2012, (DOC. #717), and charged the following:

On or about September 30, 1997, in New York County Supreme Court, New York, New York, Oscar Rodriguez, A/K/A "Chang", A/K/A "Chan", the defendant, was convicted, upon a plea of guilty, of Attempted Criminal Sale of A Controlled Substance: third Degree, a class C felony, in violation of New York Penal Law

Section 220.39, for which he recieved a sentence of one to three years' imprisonment. Accordingly, Rodriguez is subject to the enhanced penalties of Title 21, United States Code, Sections 812, 841, and 846.

(Title 21, United States Code, Section 851).

At sentencing, the Judge had no discretion to go below the mandatory minimum of 20 years' incarceration and 5 years of Supervised Release. In fact, initially, Hon. Walter found and imposed a sentence of 216 months imprisonment, a sentence Hon. Walter believed was sufficient but not greater than necessary to achieve the goals of sentencing and justice.

When Hon. Walter was informed that the prior felony information triggered the mandatory minimum of 20 years, which is 36 months (3 years) greater than the 216 months imposed, he was asked, and chose, not to impose a single day above the mandatory minimum. (Sent. Tr. 14).

In fact, Hon. Walter expressed his displeasure with the mandatory minimum he was obligated to impose, and stated on record that "there it is, it's Congress, not me." (Sent. Tr. 14), also "to run concurrently. No point in burying him." (Sent. Tr. 15).

The First Step Act ("Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act")("FSA") was signed into law by President Trump on December 21, 2018.

The FSA deals mostly with reentry of the incarcerated, and as pertinent here, reduces certain enhanced mandatory minimum penalties for some drug offenders (Section 401).

Specifically, the FSA reduced the statutory penalty of 21 U.S.C. §841(b)(1)(A) which is enhanced under 21 U.S.C. §851, as follows:

21 U.S.C. §841(b)(1)(A)

-4-

Statutory Penalty: 10 years mandatory minimum

Enhanced Penalty BEFORE FIRST STEP ACT: 20-year mandatory minimum (after one prior conviction for a felony drug offense).

Enhanced Penalty AFTER FIRST STEP ACT: 15-year mandatory minimum (after one prior conviction for a serious drug felony or serious violent felony).

Under the FSA, a prior conviction for a felony drug offense no longer qualifies for the enhanced penalties of §851.

The FSA removed "prior conviction for a felony drug offense" and replaced it with the more serious and stringent "serious drug felony" offense(s).

A "Serious Drug Felony" is defined as follows:

An offense prohibited by 18 U.S.C. 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "Serious Drug Felony" as an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment is ten years or more.

Although the FSA of 2018 did not make Section 401 retroactive, it did make the amendments applicable to pending cases. Subdivision (c) states as follows:

"(c) Applicablity to Pending Cases. - This section, and the amendments made to this section, shall apply to any offense that was committed before the date of enactment of this act, if a sentence for the offense has not been imposed as of such date of enactment."

The lack of retroactivity of Section 401 does not deprive this Court of jurisdiction to consider and/or reduce Petitioner's sentence under the FSA.

The FSA has already been used under the "extraordinary and compelling circumstances" provision of 18 U.S.C. §3582, to Section 403 of the FSA, which also has been determined not to apply retroactively.

Here, had the new provisions of Section 401 of the FSA of 2018 been in place at the time of Petitioner's sentencing, then it would have been not just possible or even probable, but obviously clear, that Petitioner would have received a sentence below the 20 year mandatory minimum, for several reasons.

First, Petitioner's prior conviction does nor qualify as a "Serious Drug Felony";

Second, the enhanced 20 year penalty would not apply and Petitioner would have only been subjected to a 15 year mandatory minimum; and

Third, Hon. Walter, at sentencing, expressed his displeasure in imposing the 20-year mandatory minimum and had already imposed a much lower sentence, but was bound by the 20-year mandatory minimum.

As such, this Court can find extraordinary and compelling reasons to reduce Petitioner's sentence based on the following reasons:

First, if Petitioner were sentenced today, under Section 401 of the FSA, Petitioner would have faced a significantly lower sentence, (at least 5 years and as much as 10 years), and would not have been subjected to the 20 year mandatory minimum;

Second, Petitioner has no legal procedural outlet to challenge the fact that he is now serving a mandatory minimum sentence that is 5 years longer than Congress deems appropriate;

Third, that the basis of the §851 enhancement does not now and never did qualify as a "Serious Drug Offense." If Petitioner were sentenced today, the Government would be unable to rely on the §851 prior felony information because Petitioner does not have a "Serious Drug Felony." Petitioner's mandatory minimum

would only be 10 years.

Fourth, the sentence imposed is not only 3 years longer than what the Judge initially found to be sufficient, but not greater than necessary to achieve the goals of sentencing, as well as meeting the §3553(a) factors, but went against the desire of the sentencing judge.

Fifth, the disparity between the national average sentence for marijuana trafficking and Petitioner's sentence, as well as the fact that more and more states have begun to decriminalize laws relating to marijuana.

Lastly, the global pandemic caused by the Corona Virus ("COVID-19") has caused judges to reconsider their previous sentences imposed on a defendant and find that extraordinary and compelling circumstances required reducing a sentence based on the potential of contracting the potentially fatal COVID-19.

## Legal Memorandum In Support

Federal law provides that a court can reduce a term of imprisonment in certain cases. This is found in Title 18 of the United States Code Section 3582(c)(1), commonly known as the "Compassionate Release" statute. Prior to December 2018, the Court could only grant a compassionate release upon motion of the director of the Bureau of Prisons. This gave the Bureau of Prisons the sole decision over whether to grant a release to an inmate.

In December 2018, President Trump signed the First Step Act into law. The First Step Act gave inmates the right to petition the courts directly for compassionate release. As a result, the compassionate release statute currently reads:

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant, has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment after considering the factors set forth in Section 3553(a) to the extent that they are applicable, if it finds that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under Section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

Subsection (a)(1) reads that "(i) extraordinary and compelling reasons warrant such a reduction;" That subsection however, is not further defined or explained. The applicable sentencing commission guideline, U.S.S.G. §1B1.13, has not been updated to provide further guidance.

The Second Circuit in <u>United States v. Zullo</u>, (19-3218-cr)(2nd Cir. September 25, 2020) has held that absent updated guidance from the Sentencing Commission, the First Step Act freed district courts to consider any potentially extraordinary and compelling reasons that a defendant might raise for compassionate release. The Court also found that Zullo's rehabilitation, as well as the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction. The Court reasoned that Congress seemingly contemplated that courts might consider such circumstances when is passed the

original compassionate release statute in 1984.

It's been held that "the statute [18 U.S.C. §3582] does [not] define - or place any limits on - what 'extraordinary and compelling reasons' might warrant such a reduction." United States v. Vigneau, 2020 US Dist. Lexis 129768 (Dist. R.I. July 21, 2020) (citing United States v. Cantu, 423 F. Supp. 3d 345, 352 (S.D. TX, 2019) (quoting Crowe v. United States, 430 F. App'x 484, 485 (6th Cir. 2011). (Internal quotations in original).

Moreover, courts in other districts have determined that unusually long sentences by today's standards could support an "extraordinary and compelling" reasons to reduce a sentence. See, e.g., United States v. Zullo, (19-3218-cr)(2nd Cir. Sept. 25, 2020); United States v. Urkevich, No. 8:03 CR 37, 2019 U.S. Dist. Lexis, 197408, 2019 WL 6037391, at *2, 4 (D. Neb. Nov. 14, 2019); United States v. Maumau, No. 2:08-CR-00758-T011, 2020 U.S. Dist. Lexis 28392, 2020 WL 806121 (D. Utah Feb. 18, 2020); United States v. Cantu-Rivera, Cr. No. H-89-204, 2019 U.S. Dist. Lexis 105271, 2019 WL 2578272, at *2 (S.D. TX, June 24, 2019); United States v. Brown, 411 F. Supp. 3d 446. 452 (S.D. Iowa 2019), amended on reconsideration, No. 4:05-CR-00227-1, 2020 U.S. Dist. Lexis 87133, 2020 WL 2091802 (S.D. Iowa, Apr. 29, 2020). For example, the Court in Brown strongly implied that changes to how long sentences are calculated could be an extraordinary and compelling reason to reduce a sentence. 411 F. Supp. 3d at 452. in Canta-Rivera, the Court also took the length of the sentence into account when it provided relief:

[T]he Court recognizes as a factor in this combination the fundamental change to sentencing policy carried out in the First Step Act's elimination of the imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions.... the combination of all these factors establishes the extraordinary and compelling reasons justifying the reduction in sentence in this case. 2019 US Dist. Lexis 105271, 2019 WL 2578272, at *2. And the Court in Urkevich, modified a

sentence based largely on the FSA's changes to 18 U.S.C. §924(c)(1)(C) sentencing.

In Maumau, the district court noted that the sentencing laws applicable to the defendant had changed after the defendant was sentenced, so that the defendant would not have been subjected to the same harsh mandatory sentences if sentenced under new provisions. The Court was focused on the defendant's age, the length of the sentence imposed, and the changes in the law. Concluding that it had the authority to provide relief to the defendant under the compassionate relief statute and that it should indeed provide relief, the Court ordered the parties to appear at a hearing to discuss what that relief should be. 2020 U.S. Dist. Lexis 28392, 2020 WL 806121, at *1, 5.

In Urkevich, the district court, similarly faced with a change in the law, reduced the defendant's sentence without ordering immediate release. <u>United States v. Urkevich</u>, 2019 US Dist. Lexis 197408, 2019 WL 6037391, at *2 (D. Neb. Nov. 14, 2019) (reducing three "stacked" firearm counts from 660 months to 180 months because the petitioner's former sentence was 40 years longer than the sentence he would have likely received under the current law).

## I. <u>COURT HAS AUTHORITY TO REDUCE SENTENCE</u>

Several courts, as established above, have already held that the FSA of 2018 grants the Court the authority to reduce a sentence, based on Extraordinary and Compelling circumstances, which include provisions of the FSA of 2018 that are not retroactively applicable. <u>United States v. Zullo</u>, (19-3218-cr)(2nd Cir. Sept. 25, 2020); see also <u>United States v. Urkevich</u>, 2019 US Dist. Lexis 197408, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); <u>United States v. Maumau</u>, No. 2:08-CR-00758-T011, 2020 US Dist. Lexis 28392, 2020 WL 806121 (D. Utah Feb 18, 2020).

## II. <u>DOJ'S POLICY REGARDING PRIOR FELONY INFORMATIONS HAS BEEN UNSOUND AND</u>

BRUTALLY UNFAIR

Hon. John Gleeson, in United States v. Kupa, 976 F. Supp. 2d 417, 421 (EDNY 2013), stated It is a grave mistake to retain a policy or find it sound just because a court finds it permissible or constitutional.

In Kupa, Judge Gleeson, stated that "the single most important factor that influences the government's decision whether to file or threaten to file a prior felony information (or to withdraw or promise to withdraw one that has previously been filed) is illegitimate. When it enacted §851 in 1970, Congress had in mind the world that DOJ asked it to create, in which federal prosecutors would carefully cull from the large number of defendants with prior drug felony convictions the hardened, professional drug traffickers who should face recidivism enhancements upon conviction. But instead, federal prosecutors exercise their discretion by reference to a factor that passes in the night with culpability: whether the defendant pleas guilty. To coerce guilty pleas, and sometimes to coerce cooperation as well, prosecutors routinely threaten ultra-harsh, enhanced mandatory sentences that no one - not even the prosecutors themselves - thinks are appropriate." Id. at 419 (internal foot notes omitted).

Here, the filing of the §851 prior felony information had the effect of doubling Petitioner's mandatory minimum of 10-years to 20-years incarceration. The §851 filing also had the effect of replacing the 216 month sentence that Hon. Walter initially felt was sufficient but not greater than necessary to achieve the goals of sentencing. The §851 filing resulted in an increased 34 month sentence. A sentence that Hon. Walter disagreed with.

Although, §851 prior felony information enhancements are legally permissible, the fact is, as here, they are often misused.

As stated, the purpose of §851 was to target and enhance kingpins and professional drug traffickers. As Hon. Gleeson found not all persistent offenders

are professional drug traffickers.

Here, Petitioner's prior stems from low-level activity, the prior does not meet the definition for "Serious Drug Offense."

On top of the harsh doubled mandatory minimum that was imposed, the actual sentence does not meet the objectives of §3553(a).

Also, Petitioner has no other legal remedy to challenge the non-qualifying predicate conviction used to support the §851 enhancement.

The §851 served to deprive the sentencing judge of any discretion in the sentence imposed, in fact, in all actuality the sentence imposed was effectively imposed by the prosecutor, since the judge had no discretion or legal authority to go below the sentences imposed.

Therefore, this Court can and should exercise its discretion to reduce Petitioner's sentence because the actual sentences imposed are unduly harsh, does not meet the objectives of §3553(a), were not issued via a judge's discretion and also because they went against the desire of the judge.

Moreover, although Congress has not decriminalize the possession or sale of marijuana on a federal level, many states have. But even on a federal level, the national average sentences of marijuana trafficking offenders in 2017 was twenty-seven months. U.S. Sentencing Comm'n, 2017 Datafiles (Quick Facts) available at https://www.ussc.gov/sites/default/files/pdfresearch-and-publications/quick-facts/marijuana_FY17.pdf. Eighty six percent of offenders received less than five years' imprisonment. Id. Only 3.3% of all offenders received 120 months or more. Id. The average sentence for marijuana trafficking in 2018 was twenty-nine months (with a median sentence of eighteen months). U.S. Sentencing Comm'n, FY 2018 Overview of Federal Criminal Cases 15 (2019).

Here, Mr. Rodriguesz, received an unduly harsh sentence of 240 months. The sentence imposed is 34 months above the 216 months the judge deemed appropriate

after reviewing the 3553(a) factors. This 240 month sentence was the result of the §851 prior felony information. it is not only approximately 3 years longer than the sentence the judge deemed appropriate, but also approximately 17½ years longer than the nation average in 2017; 15 years longer than the 86% of offenders who received 5 years or less and 10 years longer than the 3.3% who received 120 months or more.

One district court, in assessing a motion for compassionate release, noted the median lengths of sentences imposed in 2019 for a selection of especially heinous crimes - twenty years for murder, fifteen years for sexual abuse, and ten years for kidnapping. <u>United States v. Quinn</u>, No. 91-CR-00608-DLJ1-RS, 2020 US Dist. Lexis 110247, 2020 WL 3275736, at *3 (N.D. Cal. June 17, 2020) (citing U.S. Sentencing Comm'n, 2019 Annual Report and Sourcebook of Federal Sentencing Statistics 64 (2020) available at https://www.ussc.gove/research/sourcebook-2019)).

If Mr. Rodriguez was sentenced today, he would not qualify for the §851 prior felony information enhancement, and would not have received a mandatory minimum sentence of 240 months (20-years). And even assuming arguendo that Petitioner did have a prior that qualified as a "Serious Drug Felony: his mandatory minimum today would be 5 years less than the 240 months imposed. The disparity between then and now is a factor for finding extraordinary and compelling reasons to grant relief.

### III. <u>THE FSA OF 2018 AMENDED THE STATUTORY CRITERIA FOR 21 U.S.C. §851 ENHANCEMENTS</u>

The FSA of 2019, Section 401 reduced and restricted enhanced sentencing for prior drug felonies.

As pertinent here, the FSA amended by reducing and restricting the statutory penalties of 21 U.S.C. §841(b)(1)(A), which is enhanced under 21 U.S.C. §851, as

follows:

21 U.S.C. §841(b)(1)(A)

Statutory Penalty: 10-year mandatory Minimum

Enhanced Penalty BEFORE FIRST STEP ACT: 20-year mandatory minimum (after one prior conviction for a felony drug offense).

Enhanced penalty AFTER FIRST STEP ACT: 15-year mandatory minimum (after one prior conviction for a serious drug or serious violent felony).

Under the FSA a prior conviction for a felony drug offense no longer qualifies for the enhanced penalties of §§ 851 or 841(b)(1)(A).

The FSA removed "prior conviction for a felony drug offense" and replaced it with the more serious and stringent "serious drug felony" offense(s).

A "Serious Drug Felony" is defined as follows:

An offense prohibited by 18 U.S.C. 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "Serious Drug Felony" as an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment is ten years or more.

Here, Petitioner's prior drug conviction does not meet the statutory definition of "Serious Drug Felony." Petitioner does not have a prior drug conviction which required a maximum term of imprisonment of 10-years or more. Therefore, had the FSA of 2018 been in effect at the time of Petitioner's sentencing, Petitioner would have been found to be ineligible for the §851 enhancement penalties, and he would have been found to face significantly lower

sentencing provisions.

Petitioner is currently serving a 20 year imprisonment term, which is double the amount Congress now deems warranted for Petitioner's offense. Had Petitioner been sentenced today and received the benefit of the FSA, Petitioner would have not been subjected to the mandatory minimum imposed and his sentencing calculations would have begun at half the amount of time deemed applicable at his sentencing.

Thus, Petitioner should be seriously considered for a reduction in sentence, esp., as will be set forth below, that "none" of Petitioner's priors qualify for the enhancement, he no longer has a legal remedy to challenge the non-qualifying prior under §851, and most importantly, the judge at sentencing expressed his displeasure with imposing the mandatory minimum sentenced imposed and stated on record that he had no discretion to impose a lower sentence.

## IV. THE PRIOR USED NO LONGER QUALIFIES AS A VALID BASIS FOR A §851 ENHANCEMENT

Petitioner submits that the prior used to enhance him in the §851 prior felony information was a conviction of Attempted Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law sections 110.00, 220.39, for which he received a sentence of one to three years' imprisonemnt.

Petitioner further submits that the prior used does not meet the FSA of 2018 requirement that s "Serious Drug Felony" be used for the enhancement.

To qualify as a "Serious Drug Felony" the prior must have a maximum term of imprisonment of 10 years or more.

Here, Petitioner was given a maximum term of 3 years, and Petitioner never faced a maximum term of 10 years or more.

## V. THE ENHANCED PENALTIES SHOULD NOT BE ALLOWED TO STAND

As states above, the enhanced penalties of §§ 851 and 841(b)(1)(A) should not be allowed to stand because of the injustice it serves in the present case. The enhanced penalties also should not be allowed to stand because: (A) Absent the enhancement, Petitioner would have only been subjected to a 10-year mandatory minimum; (b) the starting point in Petitioner's sentencing analysis began with an incorrect range and not only anchored the Court's discretion, but removed any discretion in the sentence imposed, thus having an effect on Petitioner's substantial rights; (c) the mandatory sentence imposed is 3 years greater than when the judge initially imposed; (d) Petitioner can show not just the probability of a different outcome without the §851 enhancement, but the sentence imposed was against the judge's desire; (e) there is a huge disparity in Petitioner's sentence than with other's similarly situated on a nation level; (f) if sentenced today, Petitioner would face and receive a significantly lower sentence; (g) Petitioner has no other legal outlet to challenge the §851 enhancement.

## VI. A SENTENCE REDUCTION WOULD BE CONSISTENT WITH THE §3582 STATUTORY DIRECTIVES AND THE SENTENCING COMMISSION'S POLICY STATEMENTS

The Sentencing Commission has promulgated a policy statement regarding Compassionate Release, contained in U.S.S.G. §1B1.13, that provides guidance on the "extraordinary and compelling reasons" warranting a sentence reduction. United States v. Wong chi Fai, 2019 US Dist. Lexis 126774 (EDNY July 30, 2019).

Accordingly, pursuant to the statutory directive in 18 U.S.C. §3582(c)(1)(A) and in conjunction with the Sentencing Commission guidance provided in U.S.S.G. §1B1.13, the Court must consider three issues in evaluating [Mr. Rodriguez's] compassionate release application: (i) Whether extraordinary and compelling reasons warrant a sentence reduction consistent with the Sentencing Commission's

policy statement, (ii) whether Mr. Rodriquez is "a danger to the safety of any other person or to the community", and (iii) whether the Section 3553(a) factos "to the extent they are applicable", weigh in favor of a sentence reduction. Id.

Here, Petitioner submitted a Request for Compassionate Release to Warden David Ortiz of FCI Fort Dix, stating that based on the injustice and undue harshness of his sentence, as well as the potential of contracting the potentially fatal Corona-virus (COVID-19) that he meets the Extraordinary and Compelling Circumstances of compassionate release.

On September 8, 2020, Warden Ortiz responded that the B.O.P. Program Statement No. 5050.50 "provides guidance on the types of circumstances that present extraordinary and compelling reasons".

The narrow circumstances does not cover the reasons that Petitioner provided, and categorically bars Petitioner from any compassionate release, even though numerous courts have already found that the reasons Petitioner provided meet the extraordinary and compelling circumstances necessary for compassionate release.

In United States v. Ebbers, 2020 US Dist. Lexis 3746 (SDNY Jan. 8, 2020), the Court stated "because no statute directs the Court to consult the B.O.P.'s rules or guidelines, see 28 C.F.R. pt. 571, subpt. G, and no statute delegates authority to the B.O.P. to define the statutory requirements for compassionate release, the Court find the B.O.P.'s guidelines to be inapposite. " Accord United States v. Cantu, 2019 US Dist. Lexis 100923, 2019 WL 2498923, at *4 (S.D. TX, June 17, 2019) (holding that the B.O.P. does not determine the meaning of "extraordinary or compelling reasons"). Indeed, the B.O.P.'s rules conflict with the U.S.S.C.'s. The B.O.P. limits "extraordinary or compelling circumstances" to those "which could not reasonably have been foreseen by the court at the time of sentencing", 28 C.F.R. §571,60, but the U.S.S.C. has stated the opposite, see Application Note 2, U.S.S.G. §1B1.13. Moreover, the First Step Act reduced the B.O.P.'s control over

compassionate release and vested greater discretion with courts. Deferring to the B.O.P. would seem to frustrate that purpose. See <u>United States v. Beck</u>, 2019 US Dist. Lexis 108542, 2019 WL 2716505, at *12 (M.D. NC June 28, 2019) ("[T]he terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to B.O.P., thus establishing that Congress wants courts to take a de novo look at compassionate release motions.").

As stated, in the previous sections, extraordinary and compelling reasons warrant a sentence reduction and such a reduction would be consistent with the Sentencing Commissions policy statement.

Also, Petitioner does not pose any danger to the safety of any other person or to the community.

Lastly, a reduction in sentence would be consistent with the Section 3553(a) factors. See §3553(a)(2)(A)("the need for the sentence imposed... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); §3553(a)(b)("the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct").

A sentence reduction would allow the court to tailor the sentence to meet the 3553(a) factors and provide a sentence that is sufficient but not greater than necessary to meet the goals of sentencing and §3553(a).

Additionally, the sentence imposed deprived the judge of considering and/or weighing any 3553(a) factors because it is a mandatory minimum punishment that the Court expressed was clearly greater than necessary.

A sentence reduction would allow this Court to correct the injustice of the harsh enhanced penalty that was imposed.

## VII. LIFE THREATENING CORONA VIRUS (COVID-19)

The potentially life threatening Corona-Virus (COVID-19) should be considered as an additional §3553(a) factor, in favor of releasing and/or reducing Petitioner's sentence.

The Corona-Virus pandemic has been uncontrollable, at Petitioner's facility, FCI Fort Dix. Currently Fort Dix has the most active (positive) COVID-19 cases in the nation (B.O.P.). At the outset of the pandemic, inmates were warned by the Warden of FCI Fort Dix that social distance is NOT possible. in addition to social distancing not being possible and even with B.O.P. officials and Fort Dix inmates best efforts to prevent and/or contain the COVID-19 pandemic, the COVID pandemic has taken a new concern at FCI Fort Dix. This facility has been unable to prevent or control the spread of COVID-19.

When this facility first went on lockdown status and was basically quarantined from the public, there was zero reported cases for COVID-19. In spite of the B.O.P.'s efforts, this facility began to report positive active cases, which ultimately affected in excess of 50 inmates and numerous staff members. After reporting that no more COVID-19 cases existed at Fort Dix, the facility was again hit with at least 1 staff member testing positive. Once against this facility had reported zero positive COVID-19 cases. Recently, several hundred inmates were deliberately transferred from Elkton FCI (one of the most infected facilities, with approximately 10 inmate deaths from COVID-19) to FCI Fort Dix. This facility now has in excess of 250 positive inmates (it is rumored and Petitioner's belief that it is more like 400 inmates) and 18 staff members, all within 2-3 weeks of transferring the inmates to Fort Dix. The numbers are increasing rapidly. Staff is working double shifts with many working in affected units, then going straight to an uninfected unit to work without being tested between shifts). This facility has reported as many as 54 positive inmates in just

one unit, and those numbers do not reflect that most inmates at Fort Dix are not being tested.

Should a sentence reduction be granted, Petitioner can provide the Court and the B.O.P. with a safety and release plan.

Petitioner will self quarantine to prevent exposing or being excosed to COVID-19.

## CONCLUSION

For all the reasons stated above, Petitioner should be given a setence reduction. And for such other and further relief as this Court deems just and proper.

Respectfully Submitted,

*Oscar Rodriguez*
Mr. Oscar Rodriguez
Reg. No. 42047-054