

RECEIVED
FEB 12 2021
CHAMBERS OF
LAURA TAYLOR SWAIN
U.S.D.J.

Mr. Oscar Rodriguez
# 42047-054
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, N.J., 08640


Feburary 3rd, 2021


The Honorable Laura T. Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York, 10007

RE: United States v. Rodriguez
    10-CR-905 (LTS)
    Compassionate Release


Dear Judge Swain:

Please accept this letter in lieu of a more formal reply to the Government's Opposition ("opp" or "response"), to Petitioner's Motion for Compassionate Release, dated January 6th, 2021. This reply is based primarily on changed circumstances, including that FCI Fort Dix, where petitioner Oscar Rodriguez, is currently serving his sentence is experiencing a severe outbreak of COVID-19 cases, and Mr. Rodriguez has tested positive for Covid-19, as well as approximately 1000 other inmates.

Additionally, the Government states that petitioner's Motion for Compassionate Release on the basis that he would face a much lower mandatory-minimum sentence if he were sentenced today, and that petitioner's secondary argument that the on going COVID-19 pandemic warrants release notwithstanding his lack of any particular risk factors should be denied because neither circumstance presents an extraordinary and compelling reason

justifying a sentence reduction. The Government further argued that even if petitioner could satisfy his burden of establishing extraordinary and compelling basis for a sentence reduction, that the motion should still be denied on the basis of the factors set forth in 18 U.S.C. §3553(a).

As explained below, a Reduction in Sentence ("RIS") should be granted because: (1) Courts have found both reasons submitted by petitioner to meet the extraordinary and compelling circumstances standard/requirements; (2) the outbreaks at FCI Fort Dix have been uncontrollable. Fort Dix --leads the nation (FBOP) for the third time in positive active cases for COVID-19-- supporting the fact that FCI Fort Dix is unable to prevent or control COVID-19; (3) Petitioner's positive diagnosis although in the early stages, only time will tell if petitioner's symptoms become unmanagable and require hospitalization. It is still uncertain what long term effects petitioner may experience and more importantly, whether he may become re-infected in a facility that has admittedly acknowledged that social distancing is not possible at Fort Dix; (4) The arguments surrounding petitioner's criminal history and instant offense have already been advanced and considered by the Court at sentencing, and although, reprehensible, petitioner -- contrary to the Government's assertions-- is remorseful, and should not be the basis to deny a RIS where there exists a very real possibility of severe illness and/or death.

### MR. RODRIGUEZ POSITIVE COVID-19 DIAGNOSIS AND THE CHANGED CIRCUMSTANCES WARRANT RELIEF.

As an initial matter, contrary to the Government's assertions
the circumstances that petitioner advanced in his Compassionte
Release Motion as extraordinary and compelling reasons have been
found by numerous Courts to meet the extraordinary and compelling
circumstances necessary for a RIS, especially when considered in
conjunction.

To be sure, as set forth in petitioner's Motion for relief,
courts have determined that the disparity and/or unusually long
sentences by today's standards could support an extraordinary and
compelling reason to reduce a sentence. See, e.g., United States
v. Brooker, 2020 U.S. App. LEXIS 30605 (2d Cir. Sept. 25, 2020);
United States v. Urkevich, No. 8:03-CR-37, 2019 U.S. Dist. LEXIS
197408, 2019 WL 6037391, at *2, 4 (D. Neb. Nov. 14, 2019); United
States v. Maumau, No. 2:08-CR-00758-T011, 2020 U.S. Dist. Lexis
28392, 2020 WL 806121 (D. Utah Feb. 18, 2020); Unilled Sllalles v.
Vigneau, 2020 U.S. Dist. LEXIS 129768 (Dist. R.I. July 21, 2020).

The number of positive COVID-19 cases has surged at FCI Fort
Dix, and Mr. Rodriguez's has tested positive for COVID-19 as of
December 22, 2020.

Mr. Rodriguez's positive diagnosis and the dramallic increase
in cases at FCI Fort Dix show that the virus is capable of
spreading and being transmitted despite the best intentions of and
precautions taken by the Federal Bureau of Prisons ("FBOP" or
"BOPll").   Subsequent   to   petitioner   filing   his   motion   for
compassionate release FCI Fort Dix reported that number of inmates
who tested positive soared to over 750 inmated, and it is believed
to be about 50 staff members. The numbers prior to september was

3

reduced to zero --ON TWO PRIOR OCCASSIONS-- the numbers was reduced again on or about January 31, 2021 to as low as 30 inmates. The numbers as of the date of this writing is again in excess of 200 inmates.

In a letter dated November 9th, 2020, two United States senators for New Jersey and ten of its Congressional representatives showed frave concerns about how the COVID-19 pandemic had affected FCI Fort Dix, as well as the BOP's response to the crisis. In that letter, the lawmakers noted that the BOP alerted staff that FCI Fort Dix would be receiving transfers of inmates from FCI Elkton where almost 1,000 inmates and staff had been infected with COVID-19. The BOP transferred more than 150 inmates from FCI Elkton, and on October 28, 2020, the BOP confirmed that 54 inmates had tested positive for COVID-19 in one of the units to which the Elkton inmates had been transferred. There were, moreover, approximately 228 active cases of COVID-19 among inmates and 10 active cases among staff overall as of November 9th, 2020.

Petitioner learned that all of December 22, 2020, that out of approximately 220 inmates in his building that 186 inmates tested positive for COVID-19 (including petitioner). Within a week every unit on the East-side of Fort Dix, had a majority of its inmates testing positive for COVID-19. All five units had approximately 200 inmates test positive. In fact, it got so bad that every unit on the eastside was fully locked down on quarantine status with the inmates sealed off and limited to the floor they resided on. It got so bad that inmates had to be brought from the west-side to

work the messhall and laundry details. Meanwhile, from what petitioner learned from staff, every unit (except two) on the waset-side was also quarantined with a majority of the inmates testing positive for COVID-19. It is clear that the highly contagious Corona virus has fully infiltrated Mr. Rodriguez's housing unit, and facility. The surge in cases has caused petitioner, and the inmated at his facility to remain locked in the unit, with poor sanitary conditions, the inability to social distance, with the warden of FCI Fort Dix admitted is impossible here at Fort Dix. This is important as it relates to petitioner future risk of re-infection and the facility's inability to prevent the spread of the disease, despite its best efforts.

Mr. Rodriguez's ilness, however, is still in its early stages, and time will tell if his symptoms become unmanagable and require hospitalization. A positive COVID-19 diagnosis does not remove an inmate from the risk of imminent or long-term harm. Moreover, while it is unclear if petitioner will develop more serious symptoms, he is also still all risk of developing severe complications from COVID-19 that may have a long-term effect on his health.

Both the World Health Organizallion ("WHO") and the Centers for Disease Control and Prevention ("CDC") caution that it is not yet known whether people who have recovered from COVID-19 can become infected again. According to the WHO, "[t]here is currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection." WHO, "Immunity Passports" in the context of COVID-19 (Apr.24, 2020), available at

https://www.who.int/news-room/commentaries/detail/immunity-passports-in-the-context-of-covid-19 (last visited Dec.23, 2020). In early testing, not all individuals infected with COVID-19 developed antibodies. In particular, mild cases of COVID-19 can resolve before significant and enduring levels of antibodies are found. (Robert D. Kirkcaldy, et al., COVID-19 and Postinfection Immunity, JAMA (May 11, 2020), available at https://jamanetwork.com/journals/jama/fullarticle/2766097 (last visited Dec. 23, 2020). Indeed, there are a number of reported cases of individuals who have "recovered," tested negative, and later tested positive again.

Petitioner does not need to be re-infected with COVID-19 to become seriously ill or die from its complications. Indeed, Adrian Solarzano, an inmate at Terminal Island, was hospitalized and died from COVID-19 related complications after the BOP showed him as recovered from the virus, so did Gerald Porter, an inmate at FMC Fort Worth, died after being hospitalized for shortness of breath. So did Mr. Robert Hague-Rodgers an inmate at FMC Fort Worth who tested negative twice, yet had a positive antibody test indicating that he had the virus in the past. Another recent death reported on December 18, 2020, and occuring on December 15, 2020, was Christopher Carey, an inmate who tested positive for COVID-19 on May 4, was deemed recovered on May 20, 2020, and then went on to be hospitalized for progressive paralysis requiring bedside care in August 2020.

Recently Fort Dix reported its first death due to Covid-19.

Hundreds of Courts (and the number grows daily) have granted relief to defendants who contracted Covid-19, sometimes

specifically citing the dangers of long-term health impacts and
risk of re-infection. In the District of New Jersey, Chief Judge
Wolfson released Terrence Smith after he tested positive for
COVID-19. See Crim. No. 11-452 (Oct. 29, 2020). Judge Martinotti,
released Rosario Pali after he tested positive for COVID-19. See
Crim No. 16-245 (BRM); See also United States v. Williams, 2020 WL
3073320 (D. Md. 2020)(granting relief because "[a]lthough
recovered, it is uncertain whether [the defendant] can contract
COVID-19 more than once, and the potential long-term effects of
the illness are still undetermined"); United States v. Garrison,
Crim No. 11-922 (C.D. ca. July 8, 2020)(risk of complications or
reinfection); United States v. Halliburton, 2020 WL 3100089, *4
(G.D. Ill. 2020)(recognizing risk of relapse, reinfection, and
side effects).

Courts have also recognized the surge in positive cases in
the defendants facility. See e.g., United States v. Robert
Elliott, Crim No. 17-051-PGS (D. N.J. Nov 23, 2020)(granting
renewed motion due to covid-19 surge in FCI Fort Dix); United
States v. Taras Hankewycz, Crim No. 19-649-KMK (SDNY Nov. 17,
2020)(granting renewed motion due to surge in FCI Fort Dix).

The Government places great emphasis on petitioner's
criminal history and the instant offense. The question before this
Court is not whether petitioner has a criminal history that can be
viewed as reprehensible bvut whether Mr. Rodriguez's criminal
history should cost him his life. Petitioner has made mant
mistakes for which he is extremely remorseful, yet he submits that
a sentence that involves the very real possibility of death -

particularly as he is now sick with COVID-19- is certainly more than necessary to achieve the purposes of sentencing under §3553(a) in his case. See United States v. Zukerman, Crim No. 16-194, 2020 U.S. Dist. LEXIS 59588, at *15 (SDNY 2020)(holding that at the time of the defendant's sentencing, "the Court did not intend for that sentence to 'include incurring a great and unforseen risk of severe illness or death' brought on by a global pandemic."); United States v. Salvagno, Crim No. 5:02-51, 2020 U.S. Dist. LEXIS95844, at *20 (NDNY Apr. 23, 2020)(explaining that a p¹ounishment which includes the risk of serious illness or death "is "greater than necessary' to advance the purposes of sentencing" as reflected in §3553(a) factors); United States v. Asaro, Crim No. 17-127, 2020 U.S. Dist. LEXIS 68044, at *8 (EDNY Apr. 17, 2020)("I do not believe that continued detention, in light of the risk [of serious illness or death from COVID-19], is an appropriate or proportionate way to further the purposes of sentencing.").

Surely, Mr. Rodriguez's criminal history and offense conduct of drug-conspiracy  --however reprehensible-- does not call for a sentence that might result in his death.

Given these changed circumstances, Mr. Rodriguez submits that this drastically changes the sentencing calculus, and that early releaᶥᵉe is appropriate so he can recupertate, self-isolate and seek appropriate medical attention as needed.

In addition to all the reasons set forth in his Compassionate release motion pursuant to section 603 of the First Step Act and 18 U.S.C. §3582(c)(1)(A) a reduction in sentence should be

granted.

    WHEREFORE, petitioner respectfully requests that this Court exercise its discretion and issue a reduction in sentence and for any other and further relief as this court may deem just and proper.

Respectfully Submitted,

Mr. Oscar Rodriguez
# 42047-054
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, N.J., 08640